


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

C. DUFF NOLAN, JR., P.A. d/b/a Nolan Law Firm — PLAINTIFF

Case No. 5:02-CV-00111

MONSANTO COMPANY, ET AL. — DEFENDANTS

**MOTION TO QUASH SUBPOENA**

Stark Ligon, Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, and of its Office of Professional Conduct, for his motion to quash, states:

1. On January 21, 2003, he was served with the attached subpoena duces tecum (copy attached as Exhibit A) in this case, returnable on February 7, 2003, at 11:00 a.m., at the office of John K. Baker, who caused the subpoena to be issued.

2. The records of complaints, Formal Complaints, and other records maintained in this office are confidential and privileged pursuant to Section 6. "Confidentiality; Records" of the Arkansas Supreme Court Procedures Regulating Professional Conduct of Attorneys at Law (Rev. 2002), (the "Procedures"), promulgated by the Court pursuant to its authority under Amendment 28 to the Constitution of the State of Arkansas. A copy of Section 6 is attached as Exhibit B.

3. This office has not been provided with a written waiver of the confidentiality of these records, if any records do exist for said attorney, by the attorney named in the attached subpoena, as required by Section 6.B(6) of the Procedures. Under the confidentiality rule, this office neither confirms or denies that any records exist in the office for any attorney, unless the records are



17

designated as public records by the Procedures.

4. There has been no showing that any disciplinary records or documents relating to C. Duff Nolan that may possibly exist in this Office have nay relevance to this litigation. As a minimal precedent to this subpoena, the court should require such a showing. The "Scope" in the Preamble to the Arkansas Model Rules of Professional Conduct (Rev. 2002) provides, in part, that "Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached.... They are not designed to be a basis for civil liability..." (Copy attached as Exhibit C)

5. Violation of the procedures by any person, including the Executive Director, subjects that person to the contempt power of the Arkansas Supreme Court, pursuant to Section 27 of the Procedures (copy attached as Exhibit D).

6. To enforce its Supreme Court promulgated Procedures, this office must move to have the subpoena quashed.

7. Stark Ligon, as Executive Director, is the only person with authorization to discuss or release confidential office records. He has long been scheduled, with a non-refundable plane ticket, to be in Seattle, WA, February 4-8, 2003, to attend the annual meeting of the National Organization of Bar Counsel, the national association for bar counsel and almost the only available continuing legal education source for attorney discipline matters. It would cause substantial expense to the office and be a real burden for Ligon to be required to cancel this trip to appear at the office of Mr. Baker on February 7, 2003, in light of this motion to quash.

WHEREFORE, Stark Ligon, as Executive Director of the Committee on Professional Conduct and the Office of Professional Conduct, moves that the subpoena served on him for

production of privileged and confidential attorney discipline records be quashed, for his costs in responding to this subpoena, and for all other relief to which he is entitled.

Respectfully submitted,

ARKANSAS SUPREME COURT
OFFICE OF PROFESSIONAL CONDUCT

Stark Ligon
Stark Ligon, Executive Director
AR Bar No. 75077
Justice Building, Room 110
625 Marshall Street
Little Rock, AR 72201-1054
501-376-0313

CERTIFICATE OF SERVICE

The undersigned counsel certifies that on JANUARY 23, 2003, a copy of this pleading was served by United States mail on the person(s) and at the address(es) shown below by placing the same in a United States Postal Service facility with sufficient postage attached to insure first class delivery, and by fax (501-918-7236):

John K. Baker, Esquire
Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525

Stark Ligon
Stark Ligon

Issued by the
UNITED STATES DISTRICT COURT
Eastern District of Arkansas

## SUBPOENA DUCES TECUM IN A CIVIL CASE

C. DUFF NOLAN, JR. P.A.,
d/b/a Nolan Law Firm

PLAINTIFF

v.

CASE NUMBER 5:O2-CV-00111

MONSANTO COMPANY, ASGROW SEED COMPANY, LLC, PHARMACIA BIOTECH, INC. and PHARMACIA COMPANY

DEFENDANTS

TO: Stark Lignon, Executive Director
Office of the Arkansas Supreme Court Committee on Professional Conduct
625 Marshall Street
Little Rock, AR 72201

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| Place of Testimony | Courtroom |
|---|---|
| Place of testimony | Courtroom |
| | Date and Time |
| | Date and time |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the taking of a deposition in the above case.

| Place of Deposition | Date and Time |
|---|---|
| Place of deposition | Date and time |

☒ YOU ARE COMMANDED, to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents of objects):

Copies of all complaints (as defined in Section 2 of the Procedures of the Arkansas Supreme Court Regulation Professional Conduct of Attorneys at Law), Formal Complaints (as defined in Section 2 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law), and documents of any nature pertaining or in any way related to Arkansas attorney Cecil Duff Nolan, Jr.

| Place of Deposition | Date and Time |
|---|---|
| Mitchell Williams, Selig<br>Gates & Woodyard, P.L.L.C.<br>425 W. Capitol Avenue, Suite 1800<br>Little Rock, Arkansas 72201-3525 | February 7, 2003 at 11:00 a.m. |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the mater on which the person will testify. Federal Rules of Civil Procedure30(b)(6).

| Issuing Officer Signature and Title: | Date: |
|---|---|
| [signature]<br>Attorney for (Plaintiff or Defendant) | 1/17/03 |

Issuing Officer's Name, Address, and Phone Number

John K. Baker, Esq., 425 W. Capitol Avenue, Suite 1800, Little Rock, AR 72201-3525/(501) 688-8800

Ex. A

(e) The Chairperson of the Committee shall forward copies of the Complaint provided by the Executive Director to five members of the Committee, one of whom will be a nonlawyer, directing that they review the Executive Director's disposition of the matter.

(f) The reviewing members, by majority vote, may approve the Executive Director's disposition of the matter, direct that an affidavit of formal complaint be prepared, or request further investigation of the matter by the Executive Director. Votes may be taken by written ballots on forms supplied by the Office of Professional Conduct or by telephone. With the administrative assistance of the Office of Professional Conduct, the result of the vote will be made known to the Chairperson of the Committee and the Executive Director by a member of the five-member reviewing body. If a formal complaint is instituted, members of the five-member reviewing body shall not participate in subsequent proceedings in the matter.

(g) The Executive Director shall then notify the complainant in writing of the results of the review and dismiss the complaint, initiate a formal complaint, or request additional information as appropriate.

(h) There shall be no further review or appeal of the Committee's final decision.

D. *Staff Attorneys.*

(1) All Staff Attorneys employed by the Executive Director shall be actively licensed to practice law in the State of Arkansas.

(2) Staff Attorneys shall serve at the direction and pleasure of the Executive Director and may perform all duties and possess all authority of the Executive Director as the Executive Director may delegate except for the final determination of sufficiency of formal complaints, and the authority and responsibilities provided in Sections 3(C)(8) (subpoenas) and 5(B)(2) (oaths), which authority may be exercised by the acting Executive Director in the absence of or upon the disqualification from a case by the Executive Director.

(3) In the event of the temporary inability of the Executive Director to fully discharge the duties of office, or when a vacancy exists in that office, the Senior Staff Attorney shall discharge such duties as the acting Executive Director. If the Executive Director determines that a conflict of interest exists for the Executive Director with regard to a particular complaint, complainant, or respondent, the Executive Director may recuse from the matter and the Senior Staff Attorney shall discharge such duties as the acting Executive Director for that matter.

E. *Compensation; Expenses.* The Executive Director and staff of the Office of Professional Conduct shall be paid such reasonable salary and expenses as deemed necessary and appropriate by the Committee. Employee salaries, benefits and expenses of the office shall be payable from funds budgeted to the Committee by the Arkansas Supreme Court.

**Section 6. Confidentiality; Records.**

A. *Communications Confidential.* Subject to the exceptions listed in subsections B and C of this Section:

(1) All communications, complaints, formal complaints, testimony, and evidence filed with, given to or given before the Committee, or filed with or given to any of its employees and agents during the performance of their duties, that are based upon a complaint charging an attorney with violation of the Model Rules, shall be absolutely privileged and confidential; and

Ex. B

(2) All actions and activities arising from or in connection with an alleged violation of the Model Rules by an attorney licensed to practice law in this State are absolutely privileged and confidential.

(3) These provisions of privilege and confidentiality shall apply to complainants.

B. *Exceptions.*

(1) Except as expressly provided in these Procedures, proceedings under these Procedures are not subject to the Arkansas Rules of Civil Procedure regarding discovery.

(2) The records of public hearings conducted by the Committee pursuant to Section 11 of these Procedures are public information.

(3) In the case of disbarment, the Committee and the Office of Professional Conduct are authorized to release any information that either deems necessary for that purpose.

(4) The Committee is authorized to release information:

(a) For statistical data purposes;

(b) To a corresponding lawyer disciplinary authority or an authorized agency or body of a foreign jurisdiction engaged in the regulation of the practice of law;

(c) To the State Board of Law Examiners;

(d) To the Committee on the Unauthorized Practice of Law;

(e) To the Arkansas Client Security Fund Committee;

(f) To the Commission on Judicial Discipline and Disability;

(g) To any other committee, commission, agency or body within the State empowered to investigate, regulate or adjudicate matters incident to the legal profession when such information will assist in the performance of those duties;

(h) To any agency, body, or office of the federal government or this State charged with responsibility for investigation and evaluation of a lawyer's qualifications for appointment to a governmental position of trust and responsibility; or,

(i) Pursuant to the provisions of Section 9(A) and Section 15(B) of these Procedures.

(5) Any attorney against whom a formal complaint is pending shall have disclosure of all information in the possession of the Committee and the Office of Professional Conduct concerning that complaint including any record of prior complaints about that attorney. Procedures for discovery for formal complaints are set out in Section 8.

(6) The attorney about whom a complaint is made may waive, in writing, the confidentiality of the information.

(7) In all cases, the complainant shall be provided with a copy of the respondent attorney's affidavit of response and afforded a reasonable opportunity to reply.

C. *Sanctions Made Public.* When a public sanction becomes final under these Procedures, or when the Committee decides to initiate disbarment proceedings, a copy shall be forwarded to the Clerk and shall be maintained as a public record by the Clerk. Such information shall also be publicly disseminated, including release to the press and posting on the Arkansas Judiciary website.

B-1

connection is manifested in the fact that ultimate authority over the legal profession is vested largely in the courts.

To the extent that lawyers meet the obligations of their professional calling, the occasion for government regulation is obviated. Self-regulation also helps maintain the legal profession's independence from government domination. An independent legal profession is an important force in preserving government under law, for abuse of legal authority is more readily challenged by a profession whose members are not dependent on government for the right to practice.

The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.

Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship.

## SCOPE.

The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has professional discretion. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.

The Rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general. Compliance with the Rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings. The Rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The Rules simply provide a framework for the ethical practice of law.

Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has re-

Ex. C

quested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under Rule 1.6, that may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.

Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the state's attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. They also may have authority to represent the "public interest" in circumstances where a private lawyer would not be authorized to do so. These Rules do not abrogate any such authority.

Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. The Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.

Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

Moreover, these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege. Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. The fact that in exceptional situations the lawyer under the Rules has a limited discretion to disclose a client confidence does not vitiate the proposition that, as a general matter, the

good cause, the Committee may permit the Executive Director to retain such records for one additional period of time not to exceed three years.

A. *Notice to Respondent.* If the respondent was contacted by the Executive Director or Committee concerning the complaint, or the Executive Director or Committee otherwise knows that the respondent is aware of the existence of the complaint, the respondent shall be given prompt written notice of the expungement.

B. *Effect of Expungement.* After a file has been expunged, any response by the Executive Director or Committee to an inquiry requiring a reference to the matter shall state that there is no record of such matter. The respondent may answer any inquiry requiring a reference to an expunged matter by stating that no complaint was made.

## Section 27. Contempt.

The following shall be regarded as contempt of the Arkansas Supreme Court:

A. Willful disobedience of any Committee or panel order, summons or subpoena;

B. The refusal to testify on matters not privileged by law;

C. Knowingly to testify falsely before a panel of the Committee;

D. Engaging in the practice of law during a period of suspension;

E. Engaging in the practice of law after a disbarment or surrender of license; or,

F. Violation of these Procedures by any person.

## Section 28. Attorney trust account and automatic "overdraft" notification procedure [Effective July 1, 2002].

A. *Consent By Lawyers.* Every lawyer practicing or admitted to practice in this jurisdiction shall, as a condition thereof, be conclusively deemed to have consented to the trust account overdraft reporting and production requirements mandated by this Section.

B. *Overdraft Notification Agreement Required.* A financial institution shall be approved as a depository for lawyer trust accounts only if it files with the Arkansas Supreme Court Office of Professional Conduct (the "Office") an agreement, in a form provided by the Office, to report to that Office whenever any properly payable instrument is presented against any lawyer trust account containing insufficient funds, irrespective of whether or not the instrument is honored. The Office may establish additional procedures, to be approved by the Supreme Court, governing approval and revocation of approved status for financial institutions. The Office shall annually file with the Supreme Court Clerk and the Arkansas IOLTA Foundation, and post on the Court's website, not later than January 1, a current list of approved financial institutions. No attorney or law firm trust account shall be maintained in any financial institution that does not agree to so report and is not approved by the Office. Any such agreement shall apply to all branches of the financial institution and shall not be canceled except upon thirty (30) days written notice to the Office.

C. *Overdraft Reports.* The overdraft notification agreement shall provide that all reports made by the financial institution to the Office shall be in the following format:

Ex. D