IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

C. DUFF NOLAN JR., P.A.,           )
d/b/a NOLAN LAW FIRM,              )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )  Case No. 5-02-CV-00111
                                   )
MONSANTO COMPANY,                  )
ASGROW SEED COMPANY, LLC,          )
PHARMACIA BIOTECH, INC., and       )
PHARMACIA COMPANY,                 )
                                   )
        Defendants.                )

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

COME NOW Defendants Monsanto Company, Asgrow Seed Company, LLC and

Pharmacia Company, by and through their counsel, and respectfully submit their Answer

to the Amended Complaint of Plaintiff C. Duff Nolan, Jr., P.A., d/b/a the Nolan Law

Firm (hereinafter referred to as "Nolan" or "Plaintiff").

For their ANSWER to Plaintiff's Amended Complaint, Defendants state as

follows:

### I. PARTIES

1.      Monsanto and Asgrow admit that Nolan has an office located in Stuttgart,

Arkansas.  Except as so expressly admitted, Monsanto, Asgrow and Pharmacia do not

have information sufficient to form a belief as to the truth or falsity of the allegations

contained in Paragraph 1, and therefore deny the same.

2. Defendant Monsanto Company (hereinafter "Monsanto") admits that it is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of Missouri and that it is registered to do business in the State of Arkansas.

3. Defendant Asgrow Seed Company, LLC (hereinafter "Asgrow") admits that it is a limited liability corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of Missouri and that it is authorized to do business in the State of Arkansas.

4. Defendant Pharmacia Corporation (hereinafter "Pharmacia") admits that it is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of New Jersey and that it is authorized to do business in the State of Arkansas.

5. Monsanto, Asgrow and Pharmacia do not have information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 5 of the Amended Complaint, and therefore deny the same.

## II. JURISDICTION

6. Monsanto, Asgrow and Pharmacia admit the allegations contained in Paragraph 6 of the Amended Complaint as they relate to Monsanto, Asgrow and Pharmacia. As to Pharmacia Biotech, Inc. (hereinafter "Pharmacia Biotech"), Monsanto, Asgrow and Pharmacia do not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of the Amended Complaint, and therefore denies the same.

7.  Pursuant to the Removal Petition filed with this Court on March 29, 2001, Monsanto, Asgrow and Pharmacia admit that venue lies within this judicial district. Except as so expressly admitted, Monsanto, Asgrow and Pharmacia deny the allegations contained in Paragraph 7 of the Amended Complaint.

## III. DISCUSSION OF THE FACTS

8.  Monsanto, Asgrow and Pharmacia deny the allegations contained in Paragraph 8 of the Amended Complaint.

9.  Monsanto admits that, in or about 1995, Nolan began providing limited legal services to Monsanto. Monsanto denies that Nolan was permitted to provide any legal services other than those specifically authorized by Monsanto. Monsanto denies that Nolan ever provided legal services to Defendant Pharmacia. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in Paragraph 9 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 9 of the Amended Complaint, and therefore denies the same.

10. Monsanto and Asgrow deny the allegations contained in Paragraph 10 of the Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 10 of the Amended Complaint, and therefore denies the same.

11. Monsanto and Asgrow deny the allegations contained in Paragraph 11 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 11 of the Amended Complaint, and therefore denies the same.

12. Monsanto and Asgrow admit that a merger took place between Hartz Seed Company and Asgrow. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in Paragraph 12 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of the Amended Complaint, and therefore denies the same.

13. Monsanto admits that Nolan was provided with an internal secure e-mail address. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in Paragraph 13 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Amended Complaint, and therefore denies the same.

14. Monsanto admits that in 1999, it became involved in litigation in which Nolan provided ancillary support services principally involving the collection and production of documents. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in Paragraph 14 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of the Amended Complaint, and therefore denies the same.

15. Monsanto and Asgrow deny the allegations contained in Paragraph 15 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 15 of the Amended Complaint, and therefore denies the same.

16.     Monsanto and Asgrow deny the allegations contained in Paragraph 16 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 of the Amended Complaint, and therefore denies the same.

17.     Monsanto and Asgrow deny that Nolan was involved in extensive litigation on behalf of Monsanto and further deny that Nolan was permitted to provide any legal services other than those specific, discrete tasks which were expressly authorized by Monsanto. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 of the Amended Complaint, and therefore denies the same.

18.     Monsanto and Asgrow deny the allegations contained in Paragraph 18 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 18 of the Amended Complaint, and therefore denies the same.

19.     Monsanto and Asgrow deny the allegations contained in Paragraph 19 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of the Amended Complaint, and therefore denies the same.

20.     Monsanto, Asgrow and Pharmacia admit that a document marked as "Exhibit A" is attached to Plaintiff's Amended Complaint. Monsanto and Asgrow deny that such letter relates in any way to the amounts for which Nolan is seeking recovery. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in

Paragraph 20 of the Amended Complaint. Except as so expressly admitted, Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 of the Amended Complaint, and therefore denies the same.

21. Monsanto, Asgrow and Pharmacia admit that a document marked as "Exhibit B" is attached to Plaintiff's Amended Complaint. Monsanto and Asgrow deny that such letter relates in any way to the amounts for which Nolan is seeking recovery. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in Paragraph 21 of the Amended Complaint. Except as so expressly admitted, Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21 of the Amended Complaint, and therefore denies the same.

22. Monsanto and Asgrow deny the allegations contained in Paragraph 22 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22 of the Amended Complaint, and therefore denies the same.

23. Monsanto and Asgrow deny the allegations contained in Paragraph 23 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of the Amended Complaint, and therefore denies the same.

24. Monsanto and Asgrow do not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the Amended

Complaint with respect to the first time Nolan received copies of Monsanto's written billing policy. Monsanto denies that Nolan was ever authorized to deviate from normal billing policies by submitting bills extraordinarily late, by overcharging Monsanto for costs and fees, and for charging Monsanto for work Monsanto did not authorize. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the Amended Complaint, and therefore denies the same.

25. Monsanto and Asgrow do not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the Amended Complaint with respect to the first time Nolan received copies of Monsanto's written billing policy. Monsanto denies that Nolan was ever authorized to deviate from normal billing policies by submitting bills extraordinarily late, by overcharging Monsanto for costs and fees, and for charging Monsanto for work Monsanto did not authorize. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the Amended Complaint, and therefore denies the same.

26. Monsanto and Asgrow deny the allegations contained in Paragraph 26 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 26 of the Amended Complaint, and therefore denies the same.

27. Monsanto and Asgrow deny the allegations contained in Paragraph 27 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 27 of the Amended Complaint, and therefore denies the same.

28. Monsanto and Asgrow admit that on July 11, 2001, Monsanto made a payment of $213,321.42 to Nolan without prejudice and reserving its rights to reconcile its payments to Nolan upon review of his questionable billing practices. Except as so expressly admitted Monsanto and Asgrow deny the allegations contained in Paragraph 28 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 28 of the Amended Complaint, and therefore denies the same.

29. Monsanto and Asgrow admit that Monsanto was compelled to hire a forensic accounting firm to investigate Nolan's questionable billing practices. Except as so expressly admitted Monsanto and Asgrow deny the allegations contained in Paragraph 29 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 29 of the Amended Complaint, and therefore denies the same.

30. Monsanto and Asgrow deny the allegations contained in Paragraph 30 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 30 of the Amended Complaint, and therefore denies the same.

31. Monsanto and Asgrow deny the allegations contained in Paragraph 31 of the Amended Complaint and specifically deny that any amounts are due Nolan. Pharmacia does not have information sufficient to form a belief as to the truth or falsity

of the allegations contained in Paragraph 31 of the Amended Complaint, and therefore denies the same.

32.    Monsanto and Asgrow admit that Nolan agreed to withdraw from his representation of Monsanto on July 2, 2001. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 of the Amended Complaint, and therefore denies the same.

33.    Monsanto, Asgrow and Pharmacia admit that a document marked as "Exhibit C" is attached to Plaintiff's Amended Complaint. Except as so expressly admitted, Monsanto and Asgrow deny the allegations contained in Paragraph 33 of the Amended Complaint. Pharmacia does not have information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 33 of the Amended Complaint, and therefore denies the same.

34.    The allegations contained in Paragraph 34 of the Amended Complaint are legal statements to which no response is required.

35.    The allegations contained in Paragraph 35 of the Amended Complaint are legal statements to which no response is required.

## GENERAL DENIAL

Monsanto, Asgrow and Pharmacia deny each and every allegation in Plaintiff's Amended Complaint that is not specifically admitted herein.

## AFFIRMATIVE DEFENSES

By way of further ANSWER and as AFFIRMATIVE DEFENSES, Monsanto, Asgrow and Pharmacia states as follows:

### First Affirmative Defense

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The applicable statute of limitations and/or repose bar plaintiff's claim.

### Third Affirmative Defense

Plaintiff's claim is barred by the doctrine of laches, unclean hands, estoppel, fraud and/or waiver.

### Fourth Affirmative Defense

Plaintiff has failed to mitigate his alleged damages, if any.

### Fifth Affirmative Defense

Plaintiff's purported damages were caused by his own wrongful conduct in that he performed services which were not requested, authorized or otherwise sanctioned by Monsanto.

### Sixth Affirmative Defense

Plaintiff's claim is barred by a lack of privity.

### Seventh Affirmative Defense

Monsanto reserves the right to plead such additional separate defenses as may be appropriate, dependent upon the facts revealed in discovery.

### DEFENDANTS DEMAND A TRIAL BY JURY

WHEREFORE, having fully answered the allegations contained in Plaintiff's Amended Complaint, and having raised affirmative defenses thereto, Defendants Monsanto Company, Asgrow Seed Company, LLC and Pharmacia Company respectfully request that the Court dismiss Plaintiff's claim with prejudice and grant such additional relief as it deems necessary and appropriate.

### COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Monsanto Company and Asgrow Seed Company, LLC (hereinafter collectively referred to as "Monsanto") now file the following COUNTERCLAIMS against Plaintiff/Counterclaim Defendant C. Duff Nolan, Jr., P.A., d/b/a the Nolan Law Firm (hereinafter referred to as "Nolan" or "Counterclaim Defendant") pursuant to Rule 13 of the Federal Rules of Civil Procedure and allege as follows:

### FACTS COMMON TO ALL COUNTERCLAIMS

1. Nolan is an Arkansas corporation with its principal place of business in Stuttgart, Arkansas.

2. Monsanto Company is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of Missouri and is registered to do business in the State of Arkansas.

3. In the early 1990s, Nolan performed legal services for Hartz Seed Company (hereinafter "Hartz") on a regular basis. Nolan continued to provide some legal work for Hartz after Monsanto acquired an ownership interest in Hartz. Thereafter, Monsanto

merged Hartz into Monsanto's Asgrow subsidiary after which the role of Nolan in providing legal services was reduced. Thereafter, as opposed to acting as a general counsel for Hartz, Nolan was directed to perform only those specific legal tasks expressly authorized by Monsanto. For the most part, this consisted of assisting Monsanto's other outside legal counsel with production of documents from Asgrow and acting as a liaison between Monsanto's other outside legal counsel and witnesses employed by Asgrow. As a result, for the most part, through 2000, legal bills received from Nolan were fairly small and not noticeable as being anything out of the ordinary.

4.    During the month of June 2000, Monsanto authorized Nolan to assist Monsanto's other outside legal counsel with production of documents from Asgrow in connection with responding to initial discovery requests in the case of Francis Moorer v. Monsanto (hereinafter the "Moorer" case) pending in federal court in Alabama. Nolan's role in responding to the Moorer initial discovery requests was limited and the scope of the legal work he was authorized to perform was narrowly confined to assisting Monsanto's other outside legal counsel with production of documents from Asgrow. As part of that work, Monsanto authorized Nolan to lease copiers on a short-term basis for which Monsanto would reimburse Nolan's the actual rental expense. In addition, because of the number of documents to be copied, Monsanto authorized Nolan to hire personnel on an hourly basis to make the required copies for which Monsanto would reimburse Nolan the actual hourly charge he incurred.

5.     To that end, Nolan performed services for Monsanto with respect to these initial discovery requests. These discovery responses were completed in the summer of 2000.

6.     On or about February 28, 2001, nearly seven (7) months after the completion of the discovery project in Moorer, Monsanto received two invoices from Nolan for the months of June and July 2000 purportedly for hundreds of thousands of dollars for legal services he allegedly performed. These invoices indicated that Nolan had spent extraordinary amounts of time and had incurred substantial expenses in performing the limited tasks that he had been authorized to perform in the Moorer case.

7.     Soon thereafter, on March 12, 2001, Monsanto received another invoice from Nolan for $108,256.86. This invoice consisted solely of copying charges allegedly incurred by Monsanto in 2000 for the Moorer case.

8.     Given the limited role of Nolan's work for Monsanto with respect to the Moorer case and the extraordinarily large number of hours which were billed and substantial costs incurred during these months, Monsanto was alerted to make further inquiry into Nolan's billing practices. On April 10, 2001, Monsanto wrote to Nolan and informed him of its concerns. Monsanto advised Nolan, *inter alia*, that Nolan had failed to comply with Monsanto's billing guidelines by failing to submit his invoices in a timely fashion, that Nolan had charged Monsanto 18 cents a page for copying costs, when Monsanto's billing guidelines provide for reimbursement at 15 cents a page, that Nolan had impermissibly "marked up" his bills by charging Monsanto $27 dollars an hour for work done by contract employees which he only paid $6 to $10 dollars an hour, and that

13

charging Monsanto an hourly charge for copying and a per page charge was impermissible double billing. In reliance on Nolan's representation that he and his wife were under terrible financial stress, and without waiving any of its claims, Monsanto paid Nolan's invoice for $108,256.86 for copying charges. A copy of the April 10, 2001 letter from Monsanto's Assistant General Counsel Randy Mariani to Nolan is attached hereto as "Exhibit A," and is incorporated herein by this reference. At that time, Monsanto asked Nolan for documentation to support his charges. To this day, Nolan has failed and refused to provide adequate documentation for his bills.

9.      In July 2001, nearly eleven (11) months after the fact, Monsanto received additional invoices from Nolan for work which he and his law firm allegedly performed on the Moorer case during the months of August, September and October of 2000, months after the work he had been authorized to perform had been completed. The total sum of these invoices amounted to approximately $270,000.00.

10.     Nolan's continuing and untimely submission of invoices for such exorbitant amounts left Monsanto with no alternative but to retain the services of a forensic accounting firm to conduct an internal review of Nolan's billing practices.

11.     On July 2, 2001, Nolan wrote to Monsanto, disputing the need for an accountant's review. Nolan stated that Monsanto's concern regarding his billing practices was unwarranted. Furthermore, Nolan stated:

> If you have a legitimate concern with the invoices, why wait so long to address them? As I have expressed to you in many telephone conversations, Monsanto's non-payment has affected my credit rating and borrowing ability. I have made you aware that Terri and I have borrowed money to finance the work that has been done on the Monsanto cases and

these loans are maturing (plus paying interest). Terri and I are now at the point where we are going to consult a bankruptcy attorney to discuss our options due to Monsanto's non-payments of its accounts with the Nolan Law Firm. You may not care, but I want you to know Terri and I have listed numerous pieces of our property with a realty company in order to pay some of the loans we incurred to finance Monsanto's cases.

Nolan made these statements with the intent to induce Monsanto to pay him nearly $400,000 without seeking a professional review of his billing practices. This letter from Nolan to Monsanto on July 2, 2001 is attached hereto as "Exhibit B," and is incorporated herein by this reference.

12.     In response to Nolan's representations, Monsanto expressed concern about the excessive costs Nolan had incurred while performing such limited legal services for Monsanto in connection with the Moorer case and his representations that he, his wife and his law firm were in financial arrears. In fact, Monsanto stated:

Your letter [of July 2, 2001] indicates that your firm has taken on considerable debt in order to finance work done on Monsanto's behalf. It is not Monsanto's practice or desire to require its outside counsel to take on significant financial burdens to perform work authorized in advance by Monsanto. However, during the period in which you were incurring that debt and undertaking the related services, it does not appear that you gave Monsanto notice that you were incurring that debt or performing work of such substantial and unusual magnitude on Monsanto's account. Likewise, I am not aware of your seeking advance authorization to incur the magnitude of charges for which you now seek reimbursement [...]

[Monsanto] does not desire to create financial hardship for you or your firm. At the same time, however, Monsanto must review with care any substantial and surprising invoices that it receives from outside counsel. In an attempt to alleviate your concerns while allowing us to undertake the planned review, Monsanto is prepared to make a substantial payment subject to the results of the review. Without prejudice to any of Monsanto's rights, including the right to obtain an appropriate reconciliation at the end of the review, Monsanto will issue a payment to your firm in the amount of $200,000. We trust that this will allow you to

satisfy all of the short-term obligations that you addressed in your letter while we move towards a prompt resolution of our disputes.

A copy of the letter from Monsanto's Assistant General Counsel Randy R. Mariani to Nolan on July 5, 2001 is attached hereto as "Exhibit C," and is incorporated herein by this reference.

13.     In reliance on Nolan's representations concerning his purported financial plight, Monsanto made a payment to Nolan in the amount of $213,321.42, which constituted approximately 50% of the total amount which Nolan had invoiced in connection with the Moorer case. This payment was made in good faith, without prejudice and reserved Monsanto's rights to reconcile its payments to Nolan upon review of his billing practices. A copy of the letter from Monsanto's Assistant General Counsel Melissa Duncan to Nolan on July 11, 2001 submitting this payment is attached hereto as "Exhibit D," and is incorporated herein by this reference.

14.     Upon completion of the forensic accounting firm's review, Monsanto discovered, *inter alia*, that: (1) Nolan had "marked up" his bills, in that Monsanto was charged more than what Nolan actually paid for outside contract assistance; (2) Nolan had "double billed" by, for example, charging Monsanto for the costs of copying documents as well as billing Monsanto for the time spent by employees copying those same documents; (3) Nolan had failed to keep adequate records of disbursements to outside parties which were eventually charged to Monsanto; (4) Nolan and his professional staff billed extraordinary and excessive hours for the limited nature of the tasks they were authorized to perform; (5) Nolan had failed to keep adequate records of

the time he and his professional staff spent on tasks they were authorized to perform; and (6) Nolan and his law firm performed tasks which not expressly requested, authorized or otherwise sanctioned by Monsanto.

15.     To date, Monsanto has paid Nolan approximately $320,000 for invoiced fees that Nolan allegedly incurred for the limited work he and his law firm performed in connection with the Moorer case.  Nolan has wrongfully recovered this money from Monsanto by engaging in improper billing practices.

16.     On or about March 4, 2002, Nolan filed a lawsuit against Monsanto in the Circuit Court of Arkansas County, Arkansas alleging, *inter alia*, that Monsanto owes Nolan an additional $442,425.86 for services rendered.

17.     This lawsuit was removed to this Court on March 29, 2002.

## First Counterclaim
## (Breach of Fiduciary Duty)

18.     Monsanto incorporates by reference the allegations contained in Paragraphs 1 through 17 of its Counterclaim as if fully set forth herein.

19.     At all times relevant hereto, Monsanto and Nolan were engaged in an attorney-client relationship, thereby imposing fiduciary obligations on Nolan with respect to his representation of Monsanto.

20.     As a fiduciary, Nolan had the duty to act in the utmost good faith and trust towards Monsanto, including performing only those services that were expressly requested and authorized by Monsanto, as well as charging reasonable fees for the authorized services he provided.

21.     Nolan breached his fiduciary duty to Monsanto by failing to act in good faith towards Monsanto by: (1) "marking up" bills in order to recover his overhead expenses from Monsanto; (2) "double billing" in order to recover unreasonable sums of money from Monsanto by, for example, charging it for the costs of copying documents as well as billing for the time spent by employees copying those same documents; (3) failing to keep adequate records and documentation of disbursements made to outside parties which were charged to Monsanto; (4) performing services which were not expressly requested or authorized by Monsanto; (5) failing to keep adequate records of the time he and his professional staff spent on tasks they were authorized to perform; and (6) charging excessive, unreasonable and outrageous fees for services which he was never authorized to perform.

22.     As a result of Nolan's actions, Monsanto has paid substantial sums of money for services which Nolan, by engaging in improper billing practices, is not entitled to recover.  Furthermore, Nolan's actions have forced Monsanto to expend great time and expense in reviewing his invoices, as well as incurring significant expenses to hire a forensic accounting firm to conduct a professional review of Nolan's billing practices, all to Monsanto's damage.

23.     Monsanto seeks to recover damages for the costs it has incurred as a result of Nolan's actions.  These damages include, but are not limited to, reimbursement for the time and expense incurred by Monsanto employees in compiling and analyzing Nolan's invoices, and reimbursement for the expenses incurred in hiring a forensic accounting firm to conduct a professional review of Nolan's billing practices.

### Second Counterclaim
### (Unjust Enrichment)

24.     Monsanto incorporates by reference the allegations contained in Paragraphs 1 through 23 of its Counterclaim as if fully set forth herein.

25.     Nolan has represented to Monsanto that he and his law firm performed services for Monsanto in connection with the Moorer case which value more than $400,000.

26.     To that end, Monsanto has paid Nolan approximately $320,000 in reliance on Nolan's representations that he and his law firm actually performed valuable services for Monsanto, and that Monsanto's failure to pay those invoices were causing Nolan, his wife and his law firm severe financial problems.

27.     Upon professional review of Nolan's billing practices, Monsanto discovered, *inter alia*, that: (1) Nolan had "marked up" his bills, in that Monsanto was charged more than what Nolan actually paid for outside contract assistance; (2) Nolan had "double billed" by, for example, charging Monsanto for the costs of copying documents as well as billing Monsanto for the time spent by employees copying those same documents; (3) Nolan had failed to keep adequate records of disbursements to outside parties which were eventually charged to Monsanto; (4) Nolan and his professional staff billed extraordinary and excessive hours for the limited nature of the tasks they were authorized to perform; (5) failing to keep adequate records of the time he and his professional staff spent on tasks they were authorized to perform; and (6) Nolan

and his law firm performed tasks which not expressly requested, authorized or otherwise sanctioned by Monsanto.

28.     As a result of Nolan's actions, Monsanto was induced to pay approximately $320,000 which, in light of his improper billing practices, Nolan is not entitled to keep.

29.     Nolan has enriched himself unjustly and to the detriment of Monsanto by retaining the benefit those payments.

30.     Nolan must not be permitted unjustly to enrich himself at the expense of Monsanto.

31.     Accordingly, Monsanto seeks to recover restitution for an appropriate portion of the funds that it has already tendered to Nolan.

## Additional Counterclaims

32.     Monsanto reserves the right to assert additional counterclaims against Nolan as discovery proceeds.

WHEREFORE, Defendants Monsanto Company, Asgrow Seed Company, LLC and Pharmacia Company respectfully request that this Court:

(a)     Dismiss Nolan's Amended Complaint with prejudice;

(b)     Award Monsanto damages for the costs it has incurred in reviewing Nolan's invoices and for hiring a forensic accounting firm to investigate Nolan's billing practices;

(c)     Award Monsanto restitution for an appropriate portion of the funds that it has already tendered to Nolan;

(d)     Award Monsanto its costs and attorneys' fees; and

(e)     Grant such other relief as the Court deems appropriate.

**DEFENDANTS DEMAND A TRIAL BY JURY ON THEIR COUNTERCLAIMS.**

Upon information and belief, Plaintiff has acknowledged that Pharmacia Biotech was named incorrectly as a party to this lawsuit. Upon information and belief, Plaintiff has previously represented to Pharmacia Biotech that it would dismiss its claims against them.

Respectfully submitted,

MITCHELL WILLIAMS

John Keeling Baker, Ark. Bar. No. 97024
David P. Glover, Ark. Bar No. 99148
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

HUSCH & EPPENBERGER, LLC

Thomas DeGroot, Pro Hac Vice
Urmila P. Paranjpe, Pro Hac Vice
100 North Broadway, Suite 1300
St. Louis, MO 63102
Office: (314) 421-4800
Fax No: (314) 421-0239

Attorneys for Defendants Monsanto Company, Pharmacia Company, and Asgrow Seed Company, LLC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 11th day of February, 2003, by first class mail, postage prepaid to:

Patrick R. James
Perroni & James
801 West Third Street
Little Rock, Arkansas 72201-2103

David P. Glover

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached*

# *to Original*

# *Document in*

# *Court's Case File*